UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL SANCHEZ, CDCR #AC-8280,<br><br>　　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>WEBSTER, Correctional Officer;<br>GROUD, Correctional Officer;<br>C. AYALA, Correctional Officer;<br>J. GARCIA, Correctional Officer;<br>Sgt. DURAN,<br><br>　　　　　　　　　　　Defendants. | Case No.: 3:19-cv-01707-BAS-JLB<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [ECF No. 2]**<br><br>**AND**<br><br>**(2) DISMISSING COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2)(B) AND § 1915A(b)(1)** |

Plaintiff Miguel Sanchez, currently incarcerated at Richard J. Donovan Correctional Facility ("RJD"), in San Diego, California, and proceeding pro se, has filed a civil rights Complaint pursuant to 42 U.S.C. § 1983. (*See* "Compl.," ECF No. 1 at 1.) Plaintiff claims several correctional officials entered his cell on August 28, 2019, August 31, 2019, and September 1, 2019, "trashed" his personal property and "stole" or "destroy[ed] [his] confidential court legal mail" in retaliation for a CDCR 602 inmate appeal he filed in December 2018. (*Id.* at 1–5.)

Plaintiff has not paid the filing fee required by 28 U.S.C. § 1914(a); instead, he has filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a). (ECF No. 2.)

## I. Motion to Proceed IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, 136 S. Ct. 627, 629 (2016), and regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. June 1, 2016). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

2

payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

In support of his IFP Motion, Plaintiff has submitted a copy of his CDCR Inmate Statement Report as well as a Prison Certificate completed by Sr. Accounting Officer. (*See* ECF No. 3 at 1–3.); 28 U.S.C. § 1915(a)(2); Civ. L. R. 3.2. These statements show Plaintiff maintained no average monthly balance, had no monthly deposits credited to his account over the 6-month period immediately preceding the filing of his Complaint, and had an available balance of zero on the books at the time of filing. (*See* ECF No. 3 at 1, 3.) In fact, Plaintiff owes $17.20 to the institution for copy charges advanced to him and for damages to his ID card. (*Id.* at 3.)

Therefore, the Court **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2) and assesses no initial partial filing pursuant to 28 U.S.C. § 1915(b)(1). *See* 28 U.S.C. § 1915(b)(4); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered."). The Court will direct the Secretary of the California Department of Corrections and Rehabilitation ("CDCR"), or his designee, to collect the full $350 total fee owed in this case and to forward installments to the Clerk of the Court pursuant to 28 U.S.C. § 1915(b)(2).

## II. Initial Screening per 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)

### A. Standard of Review

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*,

762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc*., 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

### B. **Plaintiff's Allegations**

Plaintiff alleges that on August 28, 2019, August 31, 2019, and September 1, 2019—just a week before Plaintiff filed his Complaint in this case[2]—RJD Correctional Officers

---

[2] The Court cautions Plaintiff that "[t]he Prison Litigation Reform Act of 1995 (PLRA) mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, 136 S. Ct. 1850, 1854–55 (2016) (quoting 42 U.S.C. § 1997e(a)). "There is no question that exhaustion is mandatory under the PLRA[.]" *Jones v. Bock*, 549 U.S. 199, 211 (2007). In Plaintiff's Complaint, in response to the question as to whether he "previously sought and exhausted all forms of available relief from the proper administrative officials" regarding his claims, Plaintiff replies "Yes." But he also notes that he "bearly [sic] did it and it's pending. Dated 8-31-19." (*See* Compl. at 6.) While a prisoner's failure to fully exhaust all available administrative remedies is a pre–requisite to suit, that statutory requirement is an affirmative defense that must be pleaded and proven by the defense. *See*

Webster, Groud, Ayala, and Garcia, upon orders issued by Sgt. Duran, entered Plaintiff's cell and "cut," "stain[ed]," "trash[ed]," and destroyed his personal property, including his "legal confidential mail." (Compl. at 2–5.) Plaintiff maintains these acts were perpetrated against him in retaliation for his having filed grievances and CDCR 602 inmate appeals. (*Id.*) Plaintiff seeks injunctive relief preventing Defendants from entering his cell, as well as general and punitive damages. (*Id.* at 7.)

### C.  42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Naffe v. Frye*, 789 F.3d 1030, 1035–36 (9th Cir. 2015).

### D.  Privacy and Destruction of Property Claims

Plaintiff does not specify exactly what constitutional rights he believes were violated. The Court concludes that to the extent Plaintiff claims the officers violated his privacy and his right to due process when they entered his cell on August 28, 2019, August 31, 2019, and September 1, 2019, and either damaged or destroyed his personal property, including his legal paperwork and confidential mail, he fails to state a plausible claim for

---

*Jones*, 549 U.S. at 216; *Albino v. Baca,* 747 F.3d 1162, 1169 (9th Cir. 2014) (noting that defendants must "present probative evidence—in the words of *Jones*, to 'plead and prove'–that the prisoner has failed to exhaust available administrative remedies under § 1997e(a)"). "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." *Albino*, 747 F.3d at 1166.

Because the sparse allegations in this Complaint related to exhaustion are somewhat contradictory, the Court concludes this is not one of those "rare" instances in which the Plaintiff's failure to satisfy 42 U.S.C. § 1997e(a)'s pre-suit exhaustion requirement is "clear" on the face of his pleading. *See id.*; *see also Williams v. Buenostrome*, 764 F. App'x 573, 574 (9th Cir. 2019) (reversing district court's sua sponte determination that prisoner's failure to exhaust was "clear from the face of the complaint" under *Albino*, because it was "not clear at this early stage of the proceedings, before defendants have appeared, that administrative remedies were in fact available").

relief under either the Fourth or Fourteenth Amendments.[3] *See* 28 U.S.C. § 1915(e)(2)(B)(ii); § 1915A(b)(1); *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

The Fourth Amendment generally prohibits unreasonable searches and seizures. But an inmate has no "reasonable expectation of privacy in his prison cell entitling him to the protection of the Fourth Amendment against unreasonable searches and seizures." *Hudson v. Palmer*, 468 U.S. 517, 536 (1984). The loss of privacy is an "inherent incident[] of confinement," *Seaton v. Mayberg*, 610 F.3d 530, 534 (9th Cir. 2010), and the "right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Id.* (citing *Hudson*, 468 U.S. at 527). Without a reasonable expectation of privacy, Plaintiff has not pled a Fourth Amendment violation.

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prisoners have a protected interest in their personal property. *Hansen v. May*, 502 F.2d 728, 730 (9th Cir. 1974). However, the procedural component of the Due Process Clause is not violated by the type of random, unauthorized deprivations of property Plaintiff alleges to have suffered here, so long as the state provides him an adequate post-deprivation remedy. *Hudson*, 468 U.S. at 533; *Barnett v. Centoni*, 31 F.3d 813, 816–17 (9th Cir. 1994) (citing Cal. Gov't

---

[3] Plaintiff also mentions "cruel and unusual punishment" with respect to his property, (*see* Compl. at 3–5), but he alleges no facts to plausibly suggest how the destruction or loss of legal papers or confidential mail might rise the level of an Eighth Amendment violation. "[A] prison official violates the Eighth Amendment only when two requirements are met. First the deprivation alleged must be, objectively, 'sufficiently serious[:]' a prison official's act or omission must result in the denial of the 'minimal civilized measure of life's necessities.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Second, it must amount to a "wanton infliction of pain." *Id.* Plaintiff's allegations of lost and damaged property "do not impinge on a constitutionally protected basic human need and do not rise to the level of cruel and unusual punishment." *Obataiye-Allah v. Gilbertson*, No. 2:19-CV-00135-JR, 2019 WL 2303844, at *2 (D. Or. May 29, 2019).

Code §§ 810–895). Here, California's tort claim process provides that adequate post-deprivation remedy. *Barnett*, 31 F.3d at 816–17. Therefore, Plaintiff has no due process claim based on Defendants' purportedly unauthorized deprivation of his personal property, whether intentional or negligent, because a meaningful state post-deprivation remedy for his loss is available.

### E. Access to Courts

Next, to the extent Plaintiff invokes his right to "access to courts" with respect to his lost or damaged legal mail, he also fails to allege facts sufficient to state a plausible claim for relief.

Prisoners have a constitutional right to access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996). The right is limited to the filing of direct criminal appeals, habeas petitions, and civil rights actions. *Id.* at 354. Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a suit that cannot now be tried (backward-looking claim). *Christopher v. Harbury*, 536 U.S. 403, 412–15 (2002); *see also Silva v. Di Vittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011) (differentiating "between two types of access to court claims: those involving prisoners' right to affirmative assistance and those involving prisoners' rights to litigate without active interference").

However, Plaintiff must allege "actual injury" as the threshold requirement to any access to courts claim. *Lewis*, 518 U.S. at 351–53; *Silva*, 658 F.3d at 1104. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at 348; *see also Jones v. Blanas*, 393 F.3d 918, 936 (9th Cir. 2004) (defining actual injury as the "inability to file a complaint or defend against a charge"). The failure to allege an actual injury is fatal. *Alvarez v. Hill*, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) ("Failure to show that a 'non-frivolous legal claim had been frustrated' is fatal.") (quoting *Lewis*, 518 U.S. at 353 & n.4). In addition, Plaintiff must allege the loss of a "non-frivolous" or "arguable" underlying claim. *Harbury*, 536 U.S. at 413–14. The nature and description of the

underlying claim must be set forth in the pleading "as if it were being independently pursued." *Id.* at 417.

Here, Plaintiff fails to allege any actual injury. While he claims Officers Webster, Groud, Ayala, and Garcia entered his cell and destroyed his "confidential court" and "legal confidential mail," (*see* Compl. at 3–5), he fails to include any further facts to show how or why Defendants' actions caused him to suffer "actual prejudice" "such as the inability to meet a filing deadline or to present a claim," with respect to any non-frivolous direct appeal, habeas petition, or civil rights action he filed, or even sought to file. *Lewis*, 518 U.S. at 348; *Jones*, 393 F.3d at 936. Therefore, Plaintiff has not plausibly pled this claim.

### F. Retaliation

Finally, Plaintiff claims Defendants Webster, Groud, Ayala, and Garcia either entered his cell or permitted other inmates to enter his cell and destroyed his legal mail based on "order[s]" issued by Sgt. Duran, who gave "word" to the Officers to "harass [Plaintiff] daily for making CDCR 602 Appeals and grievances." (Compl. at 4–5.)

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985). A retaliation claim has five elements. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). First, Plaintiff must allege that the retaliated-against conduct is protected. *Watison*, 668 F.3d at 1114. Second, Plaintiff must allege Defendants took adverse action against him. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). Third, Plaintiff must allege a causal connection between the adverse action and the protected conduct. *Watison*, 668 F.3d at 1114. Fourth, Plaintiff must allege the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Rhodes*, 408 F.3d at 568 (emphasis omitted). Fifth, Plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution." *Rizzo*, 778 F.2d at 532; *Watison*, 668 F.3d at 1114–15.

Plaintiff's allegations are sufficient to satisfy the first two elements of a retaliation claim. As to the first element, the filing of an inmate grievance is protected conduct.

*Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005). As to the second element, Plaintiff has pled the officers took adverse action by destroying his property. *See Brodheim*, 584 F.3d at 1270 ("[T]he mere threat of harm can be an adverse action.").

But Plaintiff fails to allege any facts to plausibly satisfy the remaining elements. As to the third element, direct evidence of retaliatory intent rarely can be pled in a complaint, but an allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal. *Watison,* 668 F.3d at 1114 (citing *Pratt*, 65 F.3d at 808 ("[T]iming can properly be considered as circumstantial evidence of retaliatory intent.")). But Plaintiff does not allege that Officers Webster, Groud, Ayala, or Garcia were aware of any specific grievance or appeal Plaintiff had filed against any of them or against Sgt. Duran, and he offers no factual allegations tying the officers' actions with his protected conduct.[4] *See Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) (holding that retaliation claims requires a showing that the plaintiff's protected conduct was "the 'substantial' or 'motivating' factor behind the defendant's conduct"); *Cox v. Ashcroft*, 603 F. Supp. 2d 1261, 1271 (E.D. Cal. 2009) ("To make out a prima facie case of retaliation, the plaintiff has the burden of showing that retaliation for the exercise of a protected right was the but-for factor behind the defendant's conduct.").

As to the fourth element, Plaintiff must allege that the officers' actions had a chilling effect on him or allege "he suffered some other harm," *Brodheim*, 584 F.3d at 1269, that is "more than minimal," *Robinson*, 408 F.3d at 568 n.11. Plaintiff does not allege that either of the three incidents had a harmful or chilling effect on his filing of grievances or on any

---

[4] Plaintiff specifically identifies only a December 2018 CDCR 602 appeal "for a fractured face, [and] unnecessary use of force by correctional officers at RJD," (*see* Compl. at 5), but he does not allege that any of the named Defendants were involved in the December 2018 incident or even knew about that CDCR 602 appeal when they allegedly entered his cell and destroyed his property eight or nine months later on August 28, 2019, August 31, 2019, and September 1, 2019. "[B]are speculation that a[n] [adverse action] is retaliatory is insufficient to support a claim for relief." *Patton v. Flores*, No. 3:19-CV-00659-WQH-LL, 2019 WL 4277412, at *6 (S.D. Cal. Sept. 9, 2019) (citing *McCollum v. CDCR*, 647 F.3d 870, 882–83 (9th Cir. 2011)).

other action. Finally, as to the fifth element, Plaintiff does not allege Defendants actions' did not "advance a legitimate goal of the correctional institution." *Rizzo*, 778 F.2d at 532; *Watison*, 668 F.3d at 1114–15. At this point with no further detail by Plaintiff, it is plausible that the officers had a legitimate reason to search Plaintiffs' property.

Accordingly, the Court finds Plaintiff's Complaint fails to state a plausible retaliation claim against any of the named Defendants, and that therefore, it is subject to sua sponte dismissal in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1). Therefore, the Court dismisses Plaintiff's Complaint in its entirety.

In light of Plaintiff's pro se status, however, the Court will grant Plaintiff leave to amend his pleading deficiencies, if he can. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).

**III. Conclusion and Orders**

For the reasons explained, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

2. **DIRECTS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's prison trust account the $350 filing fee owed in this case by garnishing monthly payments from his account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Ralph Diaz, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001.

4. **DISMISSES** Plaintiff's Complaint for failing to state a claim upon which

relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1). Plaintiff **MAY** file an Amended Complaint **on or before January 6, 2020**. Plaintiff's Amended Complaint must contain Civil Case No. 19-cv-01707-BAS-JLB in its caption, must cure all the deficiencies of pleading noted, and must be complete by itself without reference to his original pleading. Any Defendants not named and any claim not re-alleged in his Amended Complaint will be considered waived.

If Plaintiff fails to file an Amended Complaint **on or before January 6, 2020**, the Court will enter a final Order dismissing this civil action based both on his failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), and his failure to prosecute in compliance with a court order requiring amendment.

**IT IS SO ORDERED**.

**DATED: November 22, 2019**

*Cynthia Bashant*
Hon. Cynthia Bashant
United States District Judge